**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

**JANE DOE,**

      Plaintiff;

v.

**JEFFERSON COUNTY PUBLIC SCHOOLS,**
**TODD ENGLES,**
**SCOTT CHRISTY,**
**DEREK HOLLIDAY,**
**KEVIN CHESTER,**
**KRISTIN MOULTON, and**
**ERIC EBLING, in his individual capacity.**

      Defendants

---

## COMPLAINT WITH JURY DEMAND

---

     Plaintiff Jane Doe ("Ms. Doe" or "Plaintiff"), hereby respectfully files this action against Defendants Jefferson County Public School ("JCPS" or the "District"), Todd Engles, Scott Christy, Derek Holliday, ~~Eric Ebling,~~ Kevin Chester, ~~and~~ Kristin Moulton, and Eric Ebling in his individual capacity (collectively, "Defendants"), through the undersigned counsel of record Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows.

<h2 style="text-align:center">I.     NATURE OF THE CASE</h2>

1. This is a civil action seeking declaratory and other appropriate equitable relief. This action seeks redress for violations of, and seeking redress under, federal law, including but not limited to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983; 20 U.S.C. §§ 1681-1688 (Title IX of the

Education Amendments of 1972). All discriminatory conduct alleged herein occurred in a public-school setting.

## II.　　JURISDICTION, PARTIES, AND VENUE

2. Jurisdiction is conferred upon this Honorable Court pursuant to 28 U.S.C. § 1331 and is founded upon the deprivation, under color of state law, of Plaintiff's rights, privileges, and immunities guaranteed by the Constitution of the United States, and more particularly under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983; 20 U.S.C. §§ 1681-1688 (Title IX of the Education Amendments of 1972).

3. Plaintiff is a resident of Colorado.

4. The District is likewise located in Colorado and educates Colorado students in Jefferson County, Colorado. The District is a resident of Jefferson County. Colo. Const. Art. 9, § 2.

5. The remaining individual defendants are residents of Colorado, and all of them were District employees, representatives, or agents, at the time of the alleged wrongdoings herein.

6. The wrongful acts alleged by the Plaintiff occurred in whole or in part in Jefferson County, Colorado.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2).

## III.　　INTRODUCTION

On July 22, 2021, Jane Doe ("Ms. Doe" or "Plaintiff") was sexually assaulted and raped by [STUDENT 1]. Approximately one week later, [STUDENT 1] sexually assaulted and raped Ms. Doe a second time. Thereafter, [STUDENT 1] continued to sexually harass Ms. Doe with nonconsensual sexual touching and explicitly sexual statements throughout the remainder of the

fall semester. [STUDENT 1] committed these acts both in and outside of Columbine High School ("CHS," "Columbine," or "School"), as well as at school sponsored and school supported events. Following the rapes, [STUDENT 1] threatened that to kill Ms. Doe if she reported his actions. While Ms. Doe believed [STUDENT 1's] was serious about his threats, she made several efforts to protect herself from him and inform Columbine of what she had suffered during the fall of 2021.

On or about August 2, near the start of the 2021 high school football season, Ms. Doe informed Columbine football coach Dave Zanetell that she did not want to work around [STUDENT 1] anymore and was uncomfortable around him. Coach Zanetell did not investigate the matter further. On or about August 15, Ms. Doe told Columbine Athletic Director and Assistant Principle Derek Holliday that something had happened to her over the summer. Defendant Holliday initiated the conversation with Ms. Doe after observing a major decline in her demeanor at school and athletic events. Defendant Holliday did not investigate the matter further. Defendant Holliday did not refer Ms. Doe to any other supportive resources at Columbine. On or about October 10, Ms. Doe told Kevin Chester that she had been sexually assaulted by a CHS football player during the summer. Defendant Chester did not further investigate the matter, nor did he file a mandatory report regarding Ms. Doe's outcry. On or about December 5, [STUDENT 1] groped Ms. Doe while at a football banquet, attended by CHS faculty including Scott Christy, CHS Principle, and Defendant Holliday. [STUDENT 1] groped Ms. Doe during the team photograph, after which she informed Defendants Christy and Holliday that she was uncomfortable and needed to leave. Neither Defendant Christy nor Holliday pursued the matter further.

After months of enduring post-traumatic stress on her own, on January 5, Ms. Doe reported the rapes and assaults to her then bishop, Mike Jones.[1] Ms. Doe outcried to Mr. Jones in the hope that he could help her to obtain therapy and counseling to treat her PTSD. Mr. Jones urged Ms. Doe to inform her parents and to formally report [STUDENT 1]. The following day, Ms. Doe met with CHS counselor Guy Gordon. Ms. Doe requested a scheduling change to move herself out of shared classes with [STUDENT 1]. Ms. Doe informed Mr. Gordon that [STUDENT 1] was harassing her. A few days later, on January 10, Ms. Doe informed her Mother that she had been raped.

Relying on familial connection, on or about January 10, Ms. Doe's Mother notified Defendant Holliday of Ms. Doe's outcry. Ms. Doe's Mother informed Defendant Holliday in the mistaken belief that he would act to protect Ms. Doe from further harm. Unfortunately, Ms. Doe's Mother was mistaken. Rather than responding to Ms. Doe's outcry with an incident report, investigation, or any kind of safety plan, Defendants Holliday, Christy, and other CHS administration and staff began a coordinated effort of hiding Ms. Doe's report and protecting [STUDENT 1] and CHS football's reputation at the expense of Ms. Doe's safety and well-being. This plan continued throughout the remainder of the academic year, critically undermined Ms. Doe's safety, subjected her to significant educational loss, and failed to comply with state and federal law.

Over the course of the next six months following Ms. Doe's outcry, the Defendants willfully failed to take action to protect Ms. Doe. Instead, the Defendants repeatedly retaliated against her, belittled her, criticized her, lied to her, and forced her to face her assailant without

---

[1] Ms. Doe and Mr. Jones are members of the Church of Jesus Christ of Latter-Day Saints ("LDS"). LDS Bishops are lay members of the religious community who occupy the position of Bishop for limited terms. Mr. Jones term concluded prior to the filing of this action.

protection. Each, and every, time CHS officials were given the opportunity to support or protect Ms. Doe they instead chose to defend her rapist and the reputation of CHS's football program. Because of their actions, [STUDENT 1] continued to have access to Ms. Doe, and Ms. Doe was forced into situations that compromised her safety and wellbeing throughout the remainder of her time at Columbine, resulting in extreme emotional distress and major educational losses.

## IV.    FACTUAL ALLEGATIONS

1. During her time at Columbine High School ("CHS") Ms. Doe was an equipment manager for the CHS' Varsity Football Team. It was through this position that she first met [STUDENT 1].

2. In the fall of 2021, CHS Assistant Principal and Athletic Director Derek Holliday began discussing the possibility of promoting Ms. Doe for recruitment by the University of Oklahoma ("OU").

3. Defendant Holliday specifically discussed connecting Ms. Doe with OU's recruiter. OU was Ms. Doe's "dream school." The only opportunity for Ms. Doe to attend OU was through a scholarship. Recruitment as proposed by Defendant Holliday would have made that scholarship possible.

4. On or about August 2, 2021, Ms. Doe informed Columbine coach Dave Zanetell that she was uncomfortable around [STUDENT 1] and did not want to work with him anymore.

5. On or about August 15, 2021, Ms. Doe informed Defendant Holliday that something had happened to her during the summer in response to his questions about her changed demeanor and behavior.

6. Defendant Holliday's recruitment proposal only began after Ms. Doe spoke with both coach Zanetell and Defendant Holliday. Defendant Holliday also ceased all recruitment

efforts after Ms. Doe reported [STUDENT 1] for rape and sexual assault as discussed at paragraph 11.

7. On or about October 10, 2021, Ms. Doe informed Columbine High School ("CHS"), through Defendant Chester that she had been sexually assaulted by a CHS football player and student at the high school.

8. As a CHS Teacher, Defendant Chester had both the authority and responsibility to report her statement to CHS and Jefferson County Public Schools ("JCPS").

9. On information and belief, Defendant Chester took no action following Ms. Doe's disclosure, nor did any official at CHS or JCPS.

10. On or about January 5, 2022, Ms. Doe requested modifications to her class schedule to ensure that she would no longer share classes with [STUDENT 1] or his close friends. This change necessitated her withdrawal from multiple classes.

11. On or about January 11, 2022, Ms. Doe informed CHS that she had been raped by a [STUDENT 1]. Ms. Doe informed CHS that [STUDENT 1] raped her, initially, on or about July 22, 2021, and that she suffered a second incident approximately one week later, on or about July 26, 2021.

12. Ms. Doe informed Defendants Christy, CHS Principal, and Holliday, CHS Assistant Principal, both of whom had proper authority and duty to investigate Ms. Doe's claims and report her outcry. On information and belief, neither Defendant reported Ms. Doe's statement.

13. As Principal and Assistant Principal, respectively, Defendants Christy and Holliday had final policymaker authority over discipline and student conduct at CHS.

14. On or about January 11, Ms. Doe informed the Jefferson County Sheriff's Office ("JCSO") of the same facts described in paragraph 4.

15. On or about January 13, Ms. Doe was formally diagnosed with PTSD by Kristen Marshall, LCSW.

16. On or about January 15, JCSO Detective Jenna Gardner interviewed Ms. Doe regarding her report. On information and belief, Detective Gardner did not interview any CHS personnel.

17. On or about January 25, Detective Gardner notified [STUDENT 1] and his family of Ms. Doe's report. [STUDENT 1] immediately retaliated against Ms. Doe by pursuing her and blocking her in hallways within Columbine.

18. In the days thereafter, Ms. Doe and her Mother met with Defendants Holliday, Christy, and Eric Ebling, CHS school resource officer ("SRO") to develop a safety plan. The documents completed by Ms. Doe and her Mother specifically referred to the plan as a "safety plan."

19. During this meeting, Defendants Christy and Holliday repeatedly questioned Ms. Doe about her dating history. Defendant Holliday insinuated that Ms. Doe's report was based on religious guilt over a consensual encounter. Specifically, Defendant Holliday asked Ms. Doe if she had "sinned" and was looking for an "excuse for God" by reporting [STUDENT 1]. Ms. Doe denied any consensual sex and any insinuation that her report was based on religious guilt.

20. Following the meeting with Defendants Christy, Holliday, and Ebling, Mr. Jones contacted Defendant Christy on Ms. Doe's behalf to clarify that Ms. Doe had reported non-consensual sex and was not avoiding judgement from her religious community.

21. Throughout the remainder of January [STUDENT 1] continued to harass Ms. Doe in Columbine's halls.

22. Throughout January, Ms. Doe continued to report [STUDENT 1's] violations of the "safety plan" to Defendants Christy and Holliday.

23. On or about February 8, Ms. Doe met with Defendant Christy. Ms. Doe met with Defendant Christy to report continued violations of the safety plan developed in January. In response to Ms. Doe's reports, Defendant Christy stated he would not limit [STUDENT 1's] movement within CHS. Defendant Christy advised that Ms. Doe respond to [STUDENT 1's] actions by waiting in classrooms until the passing period had completed before going to her next class. This advice necessarily required Ms. Doe to arrive tardy to class without a formal plan or system to excuse the tardies.

24. Defendant Christy also informed Ms. Doe that Columbine was requiring her to drop her math class based on her lagging performance. Ms. Doe's grades had substantially declined during the fall 2021 semester, and Defendant Christy stated that there was not sufficient time to catch her up.

25. By forcing her to drop the class, Ms. Doe finished school without enough math credits to attend college. Guy Gordon, CHS counselor and Ms. Doe's school counselor specifically, was required to directly contact her chosen university and request that it waive the application requirement of four years of math.

26. On or about the afternoon of February 8, Ms. Doe attended a second meeting with her Mother and Defendants Christy and Ebling. During this meeting, Defendant Christy informed Ms. Doe that Columbine had not initiated any investigation into her report. He also challenged the truth of her statements and directed her not to speak about her report

with any other CHS students or staff. Defendant Ebling told Ms. Doe and her Mother that he also would not act to restrict [STUDENT 1's] movement within CHS because the JCSO's case was ongoing.

27. On or about February 8, 2022, Detective Gardner scheduled a meeting with Ms. Doe, her Mother, and members of CHS administration. However, Ms. Doe and her Mother arrived before Detective Gardner and Defendants Christy and Holliday elected to start and conclude the meeting before Detective Gardner arrived.

28. Detective Gardner later informed Ms. Doe and her Mother that Defendant Ebling was cited by JCSO for meddling in her case.

29. Following the meeting, Defendant Holliday called Ms. Doe's Mother by telephone and directed her to stop cooperating with the JCSO investigation. Defendant Christy likewise contacted Mr. Jones and complained about Ms. Doe's attempt to report [STUDENT 1].

30. Contemporaneously [STUDENT 1] continued to harass Ms. Doe in the hallways of CHS. Facing continued inaction from CHS, Ms. Doe filed for a civil protection order on or about February 8. The court granted a temporary protection order forbidding [STUDENT 1] from attending CHS. For the first time all year, Ms. Doe was able to access her education safely.

31. On or about March 9, 2022, the court extinguished the temporary protection order due to the lack of physical evidence and competing statements offered by Ms. Doe and [STUDENT 1]. According to [STUDENT 1's] testimony at the hearing, Columbine never created a safety plan for Ms. Doe.

```
23      Q    But to your knowledge, did the school ever approach you
24  with a safety plan?
25      A    No.
```

32. [STUDENT 1's] testimony corroborated Ms. Doe's belief that, despite CHS administration's statements in January, none of the Defendants created a safety plan to prevent contact between her and [STUDENT 1].

33. On or about March 11, Ms. Doe met with Defendant Christy to, again, discuss a safety plan due to [STUDENT 1's] return to CHS.

34. On or about March 13 Defendant Christy emailed Ms. Doe and her Mother a copy of CHS's "No Contact Order," rather than producing a safety plan.

**From:** Christy Scott <Scott.Christy@jeffco.k12.co.us>
**Sent:** Sunday, March 13, 2022 3:19:47 PM
**Cc:** ▮▮▮▮▮▮▮▮▮▮
**Subject:** No Contact Order/Close Contact Areas in the building

Hello,
This email is to make sure both parties are aware of the measures that are in place for ▮▮▮ and ▮▮▮ at Columbine.
Both parties have a no contact order. No contact between both parties will include; verbal contact, physical contact, or contact through a third party. Third party, or indirect contact, means that one person passes a message to the other through a third party.
If contact in any of the above form were to occur, either myself, Derek Holliday, or SRO Eric Ebling must be contacted immediately.

35. Despite CHS's new No Contact Order, [STUDENT 1] continued to harass and pursue Ms. Doe through the halls of Columbine. Between March 13 and 29, [STUDENT 1] violated the No Contact Order at least four times.

36. On or about March 14, [STUDENT 1] pursued Ms. Doe through the halls, including into a classroom.

37. On or about March 15, [STUDENT 1] followed Ms. Doe through the hallways at Columbine and struck her backpack.

38. On or about March 17, [STUDENT 1] waited outside Ms. Doe's classroom after he was already supposed to have left the building according to the No Contact Order.

39. On or about March 29, [STUDENT 1] did not go into his designated classroom, and waited in the hallway, blocking Ms. Doe.

40. On each of these occasions Ms. Doe reported the violation to Defendant Christy. Defendant Christy took no action and actively destroyed his notes of the reports thereafter.

41. On or about April 4, 2022, Ms. Doe's Mother contacted Defendant Christy to notify him that Ms. Doe could not attend a mandatory senior-class meeting and photo due to [STUDENT 1's] continued violations of the No Contact Order. Defendant Christy responded that Mr. Gordon had been routinely supervising Ms. Doe's classes to prevent [STUDENT 1] from continuing to contact her. Defendant Christy likewise informed Ms. Doe's Mother that Mr. Gordon would attend the meeting to protect Ms. Doe.

42. When Ms. Doe discussed Defendant Christy's statements with Mr. Gordon thereafter, he denied supervising Ms. Doe's classes. He also informed Ms. Doe that he would be absent the day of the class meeting and picture and so could not attend to protect her.

43. On or about April 13, Ms. Doe and her Mother contacted Defendant Todd Engles, then-Community Superintendent for CHS from JCPS. Ms. Doe and her Mother informed Defendant Engles of her January report and CHS's ensuing actions. Defendant Engles took no action.

44. As a representative of JCPS and the superintendent charged with supervising CHS, Defendant Engles had authority and a duty to respond to Ms. Doe's report. As the superintendent charged with overseeing CHS, Defendant Engles had final policymaking authority regarding CHS and Ms. Doe's reports.

45. On or about April 14, [STUDENT 1] again violated the No Contact Order. [STUDENT 1] approached Ms. Doe in the hall and backed her into a wall. [STUDENT 1] then laughed as

Ms. Doe was pressed against the wall, before leaving. Ms. Doe reported this violation to Defendant Christy, who took no action.

46. On or about April 15, Defendant Christy informed Ms. Doe that he could not take any action regarding [STUDENT 1's] actions because he had been "vindicated" by the protection order proceedings. Defendant Christy's statement not only misapplied the law regarding the protection order proceedings, but falsely used it as a justification for his failure to act in entirely different circumstances and on a distinct legal basis.

47. During this meeting Defendant Christy also admitted that he had been deleting his notes on [STUDENT 1's] violations of the No Contact Order.

48. Throughout the spring of 2022, Ms. Doe struggled to manage [STUDENT 1's] continued harassment and intimidation, in conjunction with her PTSD, and the retaliation and gaslighting from CHS administrators. Because of these ongoing conflicts, Ms. Doe also struggled to keep up with her peers and with her prior academic performance. As a direct result of her CHS's failure to ensure her safety, [STUDENT 1's] retaliatory campaign, and her PTSD, Ms. Doe's academics declined significantly.

49. Prior to the 2021-2022 academic year, Ms. Doe was routinely an "A" and high "B" student. However, throughout the year, Ms. Doe consistently received "C" and "D" grades. Because of her grades, Ms. Doe expected to finish the semester with C's and D's, significantly damaging her eligibility for college. However, just before graduation, and without justification or notice, Ms. Doe's grades were manually inflated to A's and B's.

50. Thereafter, Ms. Doe and her Mother contacted the JCPS Title IX coordinator, Kristin Moulton, regarding [STUDENT 1]. At that point, Ms. Doe was told by the Title IX coordinator that she would take no action since they were near the end of the school year.

51. As the Title IX coordinator for JCPS, Ms. Moulton had final policymaker authority over Title IX violations, reports, investigations, and determinations.

52. Due to JCPS's actions, through its representatives, agents, and employees, Ms. Doe endured a year of ongoing sexual harassment, intimidation, and retaliation from [STUDENT 1]. Possibly worse however, from at least October 10, 2021, if not before, CHS was aware of [STUDENT 1's] actions and actively worked to silence Ms. Doe.

53. Beginning on at least January 11, 2022, CHS began actively retaliating against Ms. Doe for reporting [STUDENT 1] as discussed more thoroughly above. JCPS's actions through CHS and its own district-level representatives and agents caused the damages detailed above. However, JCPS's retaliation did not stop with Ms. Doe's graduation.

54. Ms. Doe's brother, Mr. Doe, was also a student at CHS during the 2022-2023 academic year. Mr. Doe was also a student athlete and member of the CHS football team.

55. Throughout the summer of 2022 and the 2022-2023 academic year, Mr. Doe endured harassment and bullying by members of the football team based on Ms. Doe's report. CHS's administration including Defendants Holliday and Christy were aware of the harassment and did not respond.

56. Ms. Doe's Mother, also continued to be active at CHS for her son. Ms. Doe's Mother also faced retaliation from CHS's administration, primarily from Defendants Christy and Holliday. Specifically, Defendant Christy prevented Ms. Doe from having frank discussions with her son's teachers. Whenever Ms. Doe attempted to speak with her son's teachers, Defendant Christy pursued her through the building, waited outside teacher's classrooms while she attempted to meet with them, and would then interrogate the teachers

about what Ms. Doe had discussed when she left. Defendant Christy's actions made it impossible to frankly discuss her son's success or circumstances at CHS.

57. Finally, the continued harassment and retaliation without recourse were so severe that Mr. Doe was forced to transfer to another school.

## V.     CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**20 U.S.C. § 1681**
**Deliberate Indifference to Sexual Harassment in Violation of Title IX of the Education Amendments of 1972**
(Plaintiff Against Defendant Jefferson County Public Schools)

58. Plaintiff hereby incorporates all other paragraphs of this Civil Rights Complaint and Jury demand as if set forth fully herein.

59. In pertinent part, 20 U.S.C. § 1681 provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . 20 .S.C.S. § 1681(a)(1).

60. A plaintiff must allege four factors to state a claim of school district liability under Title IX. She must allege that the district (1) had actual knowledge of, and (2) was deliberately indifferent to (3) harassment that was so severe, pervasive, and objectively offensive that it (4) deprived the victim of access to the educational benefits or opportunities provided by the school. *Murrell v. Sch. Dist. No. 1*, Denver, Colo., 186 F.3d 1238, 1246 (10th Cir. 1999) (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 638 (1999)).

61. Title IX reaches institutions and programs that receive federal funds, but it has been consistently interpreted as not authorizing suit against school officials, teachers, and other wrongdoers. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).

62. Plaintiff, Ms. Doe, was a Jefferson County Public Schools student. Ms. Doe, as a female, is a member of a suspect class that has been historically an object of invidious discrimination.

63. Defendant Jefferson County Public Schools ("JCPS"), and the individually named defendants, at all times relevant to this Complaint acted under color of state law. JCPS is a subdivision of Jefferson County, Colorado.

64. Since no later than October 10, 2021, Defendants had actual knowledge of, and have been deliberately indifferent to a CHS student-football-player's sexual assault of Ms. Doe.

65. Since no later than January 11, 2022, Defendants had actual knowledge of, and have been deliberately indifferent to, [STUDENT 1's] sexual assault and rape of Ms. Doe.

66. Since no later than January 11, 2022, Defendants had actual knowledge of, and have been deliberately indifferent to, [STUDENT 1's] actions of intimidation, harassment, bullying, and retaliation against Ms. Doe as more fully described above.

67. As a direct and proximate result of JCPS's deliberate indifference, Ms. Doe was subjected to repeated harassment, intimidation, bullying, and retaliation at CHS, as more fully described above. The acts of harassment, intimidation, bullying, and retaliation were severe, pervasive, and objectively offensive.

68. The harassment, intimidation, bullying, and retaliation, resulted in Ms. Doe suffering further significant, severe, and ongoing emotional distress and mental anguish.

69. Defendants' failure to take any action to stop the severe and pervasive harassment, bullying, intimidation, and retaliation, at CHS, despite their authority and obligation to do so, was clearly unreasonable in light of the known circumstances.

70. Ms. Doe was subjected to gender-based discrimination that was so severe, pervasive, and objectively offensive that she was denied access to educational opportunities and benefits.

71. JCPS elected to shelter and harbor a male student who sexually assaulted and raped Ms. Doe during the summer of 2021, and who continually sexually harassed Ms. Doe throughout the fall of 2021. JCPS elected to continue to shelter [STUDENT 1] throughout the winter and spring of 2022 despite its knowledge of his rape, sexual assault, and harassment.

72. Ms. Doe continues to suffer from considerable depression, anxiety, PTSD, and severe emotional distress regarding her experience, well-being, and safety.

73. Ms. Doe's rights to attend classes, extracurricular activities, and access her education have been violated.

74. JCPS by and through its agents and employees' differing treatment of similarly or equally situated students on the basis of sex is engaging in unlawful and invidious discrimination.

75. Ms. Doe has suffered damages as a result of JCPS deliberate indifference to its Title IX obligations.

**SECOND CLAIM FOR RELIEF**
**20 U.S.C. §1681(a)** *et seq.*
**Retaliation in Violation of Title IX of the Education Amendments of 1972**
(Plaintiff against Defendant Jefferson County Public Schools)

76. Plaintiff realleges all other paragraphs as if fully set forth herein.

77. In pertinent part, 20 U.S.C. § 1681 provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .
> 20 U.S.C.S. § 1681(a)(1).

78. Ms. Doe reported to Defendant Christy and Holliday that she had been raped and repeatedly sexually assaulted and harassed by [STUDENT 1] on or about January 11, 2022.

79. Thereafter, Ms. Doe and her Mother repeatedly reported ongoing acts of harassment, intimidation, bullying, and retaliation by [STUDENT 1] to Defendants Christy and Holliday.

80. In response to these reports, Defendants did not offer to remove [STUDENT 1] from CHS grounds, nor did they even offer to enforce a no-contact order. Instead, Defendants repeatedly offered [STUDENT 1] cover for his actions through the following actions, among others: a) deleting notes regarding Ms. Doe's reports; b) altering the "safety plan" reviewed by Ms. Doe and her Mother to a mutual, and entirely voluntary, no-contact order"; c) failing to file any mandatory report regarding Ms. Doe's statements; d) failing to initiate a Title IX investigation following Ms. Doe's report; e) falsely informing Ms. Doe and her Mother that a Title IX investigation had been initiated when CHS had taken no action; f) requiring Ms. Doe to withdraw from classes following her report; g) excusing [STUDENT 1's] perennial violations of the no-contact order; h) requiring Ms. Doe to alter her schedule, including arriving late to all classes, to avoid contact with [STUDENT 1]; i) personally degrading Ms. Doe to her Bishop, Mr. Jones.

81. These retaliatory acts constitute *per se* intentional violations of Title IX under clearly established Supreme Court precedent.

82. JCPS is not entitled to immunity as it receives federal funding under Title IX, which is conditioned on a clear, unambiguous, and unequivocal waiver thereof. Such waiver does not exist.

83. Because JCPS's retaliation is an intentional violation of Title IX, Plaintiff is entitled to monetary damages.

84. Plaintiff is also entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b), pre-judgment interest, and costs, as allowable by federal law.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983
**Deliberate Indifference to Sexual Harassment in Violation of the Equal Protection Clauses of the Fourteenth Amendment**

(Plaintiff Against Defendants Christy, Holliday, Engels, Chester, ~~Ebling,~~ and Moulton in their individual and official capacities, and against Defendant Ebling in his individual capcity.)

85. Plaintiff realleges all other paragraphs as if fully set forth herein.

86. In pertinent part, 42 U.S.C. § 1983 provides:

> Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .
> 42 U.S.C. § 1983

87. Plaintiff is a citizen of the United States and Defendants are persons for the purposes of 42 U.S.C. § 1983.

88. Plaintiff, Ms. Doe, was a Jefferson County Public Schools student. Ms. Doe, as a female, is a member of a suspect class that has been historically an object of invidious discrimination.

89. At all relevant times Defendants were acting under the color of state law in their official capacities as employees at a public school and school district.

90. The Equal Protection Clause requires states to treat an individual in the same manner as others in similar conditions and circumstances.

91. Since no later than October 10, 2021, Defendants had actual knowledge of, and have been deliberately indifferent to a CHS student-football-player's sexual assault of Ms. Doe.

92. Since no later than January 11, 2022, Defendants had actual knowledge of, and have been deliberately indifferent to, [STUDENT 1's] sexual assault and rape of Ms. Doe.

93. Since no later than January 11, 2022, Defendants had actual knowledge of, and have been deliberately indifferent to, [STUDENT 1's] actions of intimidation, harassment, bullying, and retaliation against Ms. Doe as more fully described above.

94. As a direct and proximate result of JCPS's deliberate indifference, Ms. Doe was subjected to repeated harassment, intimidation, bullying, and retaliation at CHS, as more fully described above. The acts of harassment, intimidation, bullying, and retaliation were severe, pervasive, and objectively offensive.

95. The harassment, intimidation, bullying, and retaliation, resulted in Ms. Doe suffering further significant, severe, and ongoing emotional distress and mental anguish.

96. Defendants' failure to take any action to stop the severe and pervasive harassment, bullying, intimidation, and retaliation, at CHS, despite their authority and obligation to do so, was clearly unreasonable in light of the known circumstances.

97. Ms. Doe was subjected to gender-based discrimination that was so severe, pervasive, and objectively offensive that she was denied access to educational opportunities and benefits.

98. JCPS elected to shelter and harbor a male student who sexually assaulted and raped Ms. Doe during the summer of 2021, and who continually sexually harassed Ms. Doe throughout the fall of 2021. JCPS elected to continue to shelter [STUDENT 1]

throughout the winter and spring of 2022 despite its knowledge of his rape, sexual

assault, and harassment.

99. Ms. Doe continues to suffer from considerable depression, anxiety, PTSD, and severe

emotional distress regarding her experience, well-being, and safety.

100.    Ms. Doe's rights to attend classes, extracurricular activities, and access her

education have been violated.

101.    JCPS by and through its agents and employees' differing treatment of similarly or

equally situated students on the basis of sex is engaging in unlawful and invidious

discrimination.

102.    Ms. Doe has suffered damages as a result of JCPS deliberate indifference to its

Title IX obligations.

### FOURTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983
### Deliberate Indifference to Sexual Harassment in Violation of the Equal Protection Clauses of the Fourteenth Amendment
(Plaintiff Against Defendant JCPS)

103.    Plaintiff realleges all other paragraphs as if fully set forth herein.

104.    In pertinent part, 42 U.S.C. § 1983 provides:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .
42 U.S.C. § 1983

105.    Plaintiff is a citizen of the United States and Defendant is person for the purposes

of 42 U.S.C. § 1983.

106.     Plaintiff, Ms. Doe, was a Jefferson County Public Schools student. Ms. Doe, as a female, is a member of a suspect class that has been historically an object of invidious discrimination.

107.     At all relevant times, the named Defendants, as agents and employees of Defendant JCPS, were acting under the color of state law in their official capacities.

108.     Defendant JCPS failed to properly train, supervise, and discipline its employees, including Defendants Engels, Christy, Holliday, Ebling, Chester, and Moulton, with respect to mandatory reporting requirements, student safety, Title IX obligations, and sex-based discrimination, harassment, and retaliation.

109.     As Community Superintendent, Defendant Engels was a final policymaker regarding CHS's adoption and enforcement of Title IX of the Education Amendments of 1972 and the Equal Protection Clause of the Fourteenth Amendment under state and federal law as relevant to this matter.

110.     Despite being personally informed of Ms. Doe's report, Defendant Engels took no action to report or investigate Ms. Doe's statements regarding [STUDENT 1], nor did he take any action to protect Ms. Doe from ongoing retaliation and intimidation by both [STUDENT 1] and the officers and agents of JCPS.

111.     As JCPS Title IX Coordinator, Defendant Moulton was a final policymaker regarding CHS's legal duties under Title IX as relevant to this matter.

112.     Despite being personally informed of Ms. Doe's report, Defendant Moulton took no action to report nor investigate Ms. Doe's allegations of rape, sexual assault, harassment, intimidation, and retaliation by both [STUDENT 1] and the officers and agents of JCPS.

113.     As Principal of CHS, Defendant Christy was a final policymaker regarding the organization and operation of CHS including the application and enforcement of federal law. Defendant Christy was also charged with caring for the safety and wellbeing of CHS students.

114.     Despite being personally informed of Ms. Doe's report, Defendant Christy actively resisted reporting or investigating [STUDENT 1], supported [STUDENT 1] despite his continued campaign of intimidation, and retaliated against Ms. Doe for her attempt to report sexual misconduct as more thoroughly described above.

115.     As Assistant Principle and Athletic Director of CHS, Defendant Holliday was a final policymaker for the purposes of enforcing Title IX and state and federal antidiscrimination law within CHS and its extracurricular athletic programs.

116.     Despite being personally informed of Ms. Doe's report, Defendant Holliday withheld information from Ms. Doe and the Jefferson County Sheriff's Office ("JCSO"), impeded Ms. Doe's efforts to comply with the JCSO investigation, failed to report or investigate Ms. Doe's allegations regarding [STUDENT 1], and retaliated against her for submitting the report as more thoroughly described above.

117.     As a Teacher at CHS, Defendant Chester was a final policymaker for the purposes of effectuating student discipline.

118.     Despite being personally informed of Ms. Doe's report, Defendant Chester failed to investigate or report her allegations of ongoing sexual harassment, assault, and rape by [STUDENT 1].

119.     As specifically elucidated, JCPS failed to properly train, supervise, and discipline its employees, including the named Defendants, through formal policy, training, and

actual practices and habits, of ignoring and avoiding duties and obligations under state and federal law, and of retaliating against victims of sexual misconduct.

120.     JCPS failed to discipline its employees in a manner that would not lead to unlawful failures to report, investigate, and determine the veracity of allegations of sexual misconduct.

121.     JCPS failed to discipline its employees in a manner that would not lead to unlawful attempts to deter victims of sexual misconduct from reporting their injuries to state authorities.

122.     JCPS failed to discipline its employees in a manner that would not lead to unlawful attempts to retaliate against victims of sexual misconduct.

123.     JCPS failures and refusals to discipline its employees for their unlawful conduct conveyed a signal that JCPS not only tolerates but endorses flaunting mandatory reporting requirements under federal and state law, interference in sexual misconduct investigations, and retaliation against those who report sexual misconduct.

124.     JCPS's supervisory failure to adequately investigate, hire, train, supervise, and discipline its employees with respect to their duties under federal and state law regarding sexual misconduct is a custom, policy, and/or practice of JCPS and a moving force behind the constitutional violation described herein.

125.     The constitutional violation perpetrated against Ms. Doe in this matter was a foreseeable consequence of JCPS's actions and inactions.

126.     JCPS was deliberately indifferent to Ms. Doe's constitutional rights by failing to properly train, monitor, supervise, and discipline its agents and employees with respect to their obligations under state and federal law regarding sexual misconduct. JCPS could

and should have pursued reasonable methods of training, monitoring, supervising, and disciplining its employees.

127.    JCPS's policies, customs, and/or practices in failing to monitor, train, supervise, and discipline its employees was the causal force and proximate cause of the violation of Ms. Doe's constitutional right.

128.    The acts or omissions of JCPS caused Ms. Doe damages in that she suffered ongoing harassment, retaliation, and denial of access to her education throughout the 2021-2022 academic year.

129.    The acts or omissions of JCPS as described herein deprived Ms. Doe of her rights, privileges, liberties, and immunities, secured by the Constitution of the United States of America, and caused her other damages.

## VI.    REQUEST FOR RELIEF

Plaintiff requests that the Court enter judgement in her favor and against Defendants as follows:

130.    Awarding the Plaintiff special damages for out-of-pocket expenses in amounts to be established at trial;

131.    Awarding the Plaintiff general damages for emotional distress in amounts to be established at trial;

132.    Punitive damages, pursuant to 42 U.S.C. §1981, 2000(e), in the maximum amount permitted by law;

133.    Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses and costs incurred in this action;

134.    Awarding the Plaintiff pre-judgment interest;

135.     Awarding the Plaintiff any additional and further relief that the Court finds

equitable, appropriate, or just.


*/s/ Igor Raykin*
Igor Raykin, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com

*/s/ Conor O'Donnell*
Conor O'Donnell, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 310-7903
E-mail: conor@coloradolawteam.com

*/s/ Michael Nolt*
Michael Nolt, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 863-4256
E-mail: michael@coloradolawteam.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

*/s/ Krystle Jennings*
Krystle Jennings, Paralegal
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Office Phone: 720-748-8888
Direct: 720-505-3174
Fax: 720-523-8147
E-mail: krystle@coloradolawteam.com